**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Nancy Calchi, individually and on behalf of all others similarly situated, | Case No. 7:22-cv-01341 |
| *Plaintiff*, | |
| v. | **JURY TRIAL DEMANDED** |
| GlaxoSmithKline Consumer Healthcare Holdings (US) LLC, GSK Consumer Health, Inc., and Pfizer Inc. | |
| *Defendants*. | |

**<u>Class Action Complaint</u>**

i

**<u>Table of Contents</u>**

I.      Introduction. ......................................................................................................... 1

II.     Parties. ................................................................................................................. 1

III.    Jurisdiction and Venue. ....................................................................................... 2

IV.     Facts. .................................................................................................................... 2

        A.      Defendants make, market, distribute and sell Robitussin products
                prominently labeled "Non-Drowsy." ...................................................... 2

        B.      The Non-Drowsy Robitussin Products cause drowsiness. ....................... 7

        C.      Defendants' Non-Drowsy representations are misleading. ..................... 8

        D.      Plaintiff was misled by Defendants' misrepresentations ..................... 11

        E.      Class Action Allegations. ..................................................................... 12

V.      Claims ............................................................................................................... 14

VI.     Jury Demand. .................................................................................................... 23

VII.    Prayer for Relief. .............................................................................................. 23

## I.      Introduction.

1.      Defendants make, distribute, sell, and market "Robitussin" over-the-counter cough and flu medicine.  Several Robitussin products contain the active ingredient Dextromethorphan Hydrobromide ("DXM").  At least 16 Robitussin products containing DXM prominently state on the front of their label that they are "Non-Drowsy." [1]

2.      By prominently labeling these products as "Non-Drowsy," Defendants led Plaintiff and other consumers to believe that the Non-Drowsy Robitussin Products do not cause drowsiness, and that drowsiness is not a side effect of those products.  But the truth is that products containing DXM—and thus the Non-Drowsy Robitussin Products—do cause drowsiness, and that drowsiness is a known side-effect of DXM.

3.      In this way, Defendants misled Plaintiff and other reasonable consumers about the effects of the Non-Drowsy Robitussin Products.

4.      Defendants' misrepresentations allowed them to overcharge Plaintiff and other consumers for the Non-Drowsy Robitussin Products.

## II.     Parties.

5.      Plaintiff Nancy Calchi is a citizen of New York (domiciled in Bloomingburg). The proposed class (identified below) includes citizens of numerous states.

6.      Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC is a citizen of Delaware and New Jersey.  It is a Delaware corporation with its principal place of business in Warren, New Jersey.

7.      Defendant GSK Consumer Health, Inc. is a citizen of Delaware and New Jersey. It is a Delaware corporation with its principal place of business in Warren, New Jersey.

---

[1] Throughout this Complaint, Robitussin products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy Robitussin Products."

8.     Defendant Pfizer, Inc. is a citizen of Delaware and New York.  It is a Delaware corporation with its principal place of business in New York, New York.

**III.     Jurisdiction and Venue.**

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendants.

10.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendants sold the Non-Drowsy Robitussin Products to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including selling Non-Drowsy Robitussin Products to Plaintiff.

**IV.     Facts.**

    **A.     Defendants make, market, distribute and sell Robitussin products prominently labeled "Non-Drowsy."**

11.     The GSK Defendants[2] manufacture, distribute, market, and sell the Non-Drowsy Robitussin Products, and have done so since mid-2019.  Prior to that, Pfizer manufactured, distributed, marketed, and sold the Non-Drowsy Robitussin Products.

12.     According to Pfizer's filings in other cases, Pfizer "no longer owns the rights to the Products, and any potential liability it may have had for the Products has been transferred to GSK pursuant to a Stock and Asset Purchase Agreement."  Defendants' Answer to Plaintiff's

---

[2] GSK refers collectively to GSK Consumer Health and GlaxoSmithKline Consumer Healthcare Holdings.

First Amended Class Action Complaint at 1-2, *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 4:20-cv-09077-JSW (N.D. Cal. Aug. 20, 2021).   If this representation is true, GSK is responsible, and liable for, the distribution, marketing, and sale of the Non-Drowsy Robitussin Products at all relevant times. [3]

13.     In the alternative, GSK is responsible, and liable for, the distribution, marketing, and sale of the Non-Drowsy Robitussin Products since mid-2019, and Pfizer is responsible, and liable for, such distribution, marketing, and sale beforehand.

14.     The Non-Drowsy Robitussin Products that Defendants distributed, marketed, and sold, and continue to distribute, market, and sell, include: Robitussin Honey Cough + Chest Congestion DM; Robitussin Maximum Strength DM Day/Night Pack; Robitussin Maximum Strength DM Day/Night Pack; Robitussin Maximum Strength Severe Multi-Symptom Cough Cold + Flu; Robitussin Maximum Strength Severe Multi-Symptom Cough Cold + Flu Pack; Robitussin Maximum Strength Severe Cough + Sore Throat; Robitussin Maximum Strength Cough & Chest Congestion DM Capsules; Robitussin Cough + Congestion DM; Robitussin Sugar-Free Cough + Chest Congestion DM; Robitussin Multi-Symptom Cold CF; Robitussin Long-Acting CoughGels; Robitussin Maximum Strength Honey Severe Cough, Flu + Sore Throat, Robitussin Children's Cough & Chest Congestion DM; Robitussin Children's Cough & Cold CF; Robitussin Children's Honey Cough & Chest Congestion DM; and Robitussin Children's DM Day/Night Pack.

15.     The front label of each Non-Drowsy Robitussin Product prominently states that the product is "Non-Drowsy."  For example:

---

[3] If GSK stipulates that it will assume all liability for the accused acts throughout the relevant timeframe, Plaintiff is willing to dismiss Pfizer from the case.

**Multi-Symptom Cough Cold + Flu** [4]



---

[4] https://www.robitussin.com/adult-robitussin/maximum-strength-severe-multi-symptom-cough-cold-flu/

**Cough + Chest Congestion DM** [5]



**Multi-Symptom Cold CF** [6]



---

[5] https://www.robitussin.com/adult-robitussin/maximum-strength-cough-chest-congestion-dm-liquid-filled-capsules/
[6] https://www.robitussin.com/adult-robitussin/multi-symptom-cold-cf/

**Children's Cough & Chest Congestion DM** [7]



16.     These representations are materially the same across all Non-Drowsy Robitussin Products.

17.     The Non-Drowsy Robitussin Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect.

18.     Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is *not* a side-effect of the product.

19.     Indeed, Defendants labeled the products this way because they intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

---

[7] https://www.robitussin.com/childrens-robitussin/cough-chest-congestion-dm/

**B.      The Non-Drowsy Robitussin Products cause drowsiness.**

20.      In truth, products containing DXM—like the Non-Drowsy Robitussin Products—do cause drowsiness, and drowsiness is a documented side effect of DXM. [8]

21.      In fact, drowsiness is a common side effect at the recommended dosages. According to a 2017 GSK presentation on drug labeling, a "common" adverse reaction (i.e., side effect) is one that occurs in 3% or more drug takers and a "very common" side effect occurs in 10% or more drug takers.  And, for example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [9, 10]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many Robitussin products. [11]

22.      The FDA's adverse event report database confirms that "sedation" is one of the most frequently-cited side-effects of dextromethorphan-containing products. [12]

---

[8] Dextromethorphan: MedlinePlus Drug Information, NIH National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (listing drowsiness as a side effect)

[9] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997).

[10]  The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence

[11] For example, Robitussin Cough + Chest Congestion DM contains 20 mg of DXM per 20 ml of syrup and the recommended dosage is 20 ml orally every 4 hours. https://www.robitussin.com/adult-robitussin/cough-chest-congestion-dm/

[12] Even "minimal" sedation is associated with drowsiness.  *See* https://www.medicinenet.com/sedation_vs_general_anesthesia/article.htm

23.     For this reason, the Federal Aviation Administration prohibits pilots from flying

after ingesting medicines that contain DXM: [13]

| | | | | |
|---|---|---|---|---|
| Cough | Cough/cold products | Coricidin (allowed if no chlorpheniramine) | dextromethorphan (Delsym) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines.  If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives after the last dose (see above). |
| | | guaifenesin (found in Mucinex and Robitussin) Mucinex fast-max severe congestion and cough (liquid) | Dayquil (contains dextromethorphan) | |
| | | | Most "night-time" or "PM" medications contain a sedating antihistamine: | |
| | | Identify combo vs isolated | - Coricidin HBP cough & cold (contains chlorpheniramine) - Nyquil (contains doxylamine) | |

### C.      Defendants' Non-Drowsy representations are misleading.

24.     The Food and Drug Administration prohibits drug labeling that is "false or

misleading."  21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does

cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

25.     Based on the fact that Defendants label the Non-Drowsy Robitussin Products as

"Non-Drowsy," a reasonable consumer would expect that those products do not cause

drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect

of the products.  Indeed, according to Consumer Reports, "'Non-drowsy' is code for

antihistamines and other medications that don't make you sleepy." [14] This is the plain meaning of

"non-drowsy," which means "not causing or accompanied by drowsiness." [15]

26.     Robitussin's labeling does not contain any language that a reasonable consumer

would understand to qualify these representations, or that would otherwise put a reasonable

consumer on notice of the fact that the Non-Drowsy Robitussin Products actually cause

---

[13] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf
[14] "How to read over the counter (OTC) drug labels," Consumer Reports,
https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm
[15] https://www.merriam-webster.com/medical/nondrowsy

drowsiness.

27.      Unlike Defendants, some other drug makers do not falsely claim that DXM products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth:



28.      Defendants could have simply omitted the false and misleading statement, "Non-Drowsy," from their products.

29.      Or, if Defendants wanted to say something to indicate that a Non-Drowsy Robitussin Product might cause *less* drowsiness than another Robitussin product, they could have made a truthful statement to this effect, as other drug makers do.

30.      For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":



31.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert (like work), or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving, or flying a plane, is dangerous.

32.     Because Defendants make and sell the Non-Drowsy Robitussin Products, Defendants researched the known and common side effects of DXM.  This is diligence that large companies like Defendants would do when selling a drug.  As a result, Defendants knew that

10

DXM causes drowsiness.  Furthermore, Defendants control their labeling, knowingly put on the "Non-Drowsy" representations, and know the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.  For these reasons, Defendants knew that its labeling was false and misleading, or was reckless or willfully blind to this fact.  And as alleged above, Defendants intended that consumers would rely on the "Non-Drowsy" labeling, so that consumers would purchase more products and pay a price premium.

33.      Defendants' false statements increased the demand for Non-Drowsy Robitussin Products and allowed Defendants to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving). As a result, Defendants were able to charge more for these products than they would have been able to had the labeling been truthful.  Accordingly, as a direct result of Defendants' false statements, Defendants were able to charge a price premium for these products.  As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury.

**D.      Plaintiff was misled by Defendants' misrepresentations**

34.      In 2021, Ms. Calchi bought Robitussin Cough + Chest Congestion DM from a ShopRite in Middletown, New York.  The package said "Non-Drowsy" prominently on the label, and Plaintiff read and relied on this statement when purchasing the product.  But when Plaintiff took the medication as recommended, she became unexpectedly drowsy.  Plaintiff would not have bought this product had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product.

35.      Plaintiff would purchase Non-Drowsy Robitussin Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).   Plaintiff, however, faces an

imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

**E.     Class Action Allegations.**

36.     Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy Robitussin Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

37.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "**Consumer Protection Subclass**").

38.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy Robitussin Products in New York (the "**New York Subclass**").

39.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

40.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of Non-Drowsy Robitussin Products, there are millions of proposed class members.

12

*Commonality*

41.     There are questions of law and fact common to the proposed class.  Common

questions of law and fact include, without limitation:

- Whether the Non-Drowsy Robitussin Products cause drowsiness;

- Whether Defendants' labeling of the Non-Drowsy Robitussin Products as "non-drowsy" is misleading;

- Whether Defendants violated state consumer protection statutes;

- Whether Defendants committed a breach of express warranty; and,

- Damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

42.     Plaintiff's claims are typical of the proposed class.  Like the proposed class,

Plaintiff purchased Non-Drowsy Robitussin Products.  Like the proposed class, Plaintiff would

not have purchased the products, or would have paid less for them, had she known that they cause

drowsiness.

*Predominance and Superiority*

43.     The prosecution of separate actions by individual members of the proposed class

would create a risk of inconsistent or varying adjudication with respect to individual members,

which would establish incompatible standards for the parties opposing the class.  For example,

individual adjudication would create a risk that breach of the same express warranty is found for

some  proposed class members, but not others.

44.     Common questions of law and fact predominate over any questions affecting

only individual members of the proposed class.  These common legal and factual questions arise

from  certain central issues which do not vary from class member to class member, and which

may be  determined without reference to the individual circumstances of any particular class

13

member.  For example, a core liability question is common: whether Defendants breached an

express warranty by falsely marketing products that cause drowsiness as "Non-Drowsy."

45.     A class action is superior to all other available methods for the fair and efficient

adjudication of this litigation because individual litigation of each claim is impractical.  It would

be unduly burdensome to have individual litigation of millions of individual claims in separate

lawsuits, every one of which would present the issues presented in this lawsuit.

## V.     Claims

### Count I: Violations of State Consumer Protection Acts
**(on behalf of Plaintiff and the Consumer Protection Subclass)**

46.     Plaintiff incorporates by reference each and every factual allegation set forth

above.

47.     This count is brought on behalf of Plaintiff and the Consumer Protection Subclass

for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following   Cal. Civ. Code §1750 and the following. |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |

| | |
|---|---|
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code 51-15, and the following. |

| | |
|---|---|
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following. |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

48.     Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendants' conduct, including the false labelling of

16

the Non-Drowsy Robitussin Products and sale of those misleading products to Plaintiff and Class members, violates each statute's prohibitions.

49.     Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members.  Defendants' misrepresentations were misleading to a reasonable consumer, and Plaintiff and Class members reasonably relied on Defendant's misrepresentations.

50.     Defendants intended that Plaintiff and the proposed Class members would rely on their materially deceptive representations.  Defendants were also aware of the side effects of DXM and thus knew that their representations were false and were likely to mislead consumers.

51.     For applicable statutes, Plaintiff mailed Defendants a written notice and demand for correction on February 9, 2022.  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

52.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.  In this way, Plaintiff and the proposed Class members have suffered an ascertainable loss, in an amount to be determined at trial.

<u>**Count II: Violation of New York's Gen. Bus. Law § 349**</u>
**(on behalf of Plaintiff and the New York Subclass)**

53.     Plaintiff incorporates by reference each and every factual allegation set forth above.

54.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

55.     Plaintiff and the Subclass purchased Non-Drowsy Robitussin Products in New York.

56.     Defendants' false and misleading "Non-Drowsy" claims are consumer-oriented. Defendants' misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase these products.  These transactions recur every day.

57.     Defendants' "Non-Drowsy" misrepresentations were material.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to consumers and affected their choice to purchase Non-Drowsy Robitussin Products.  And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers.

58.     Defendants' misrepresentations were willful and knowing.  Because Defendants make and sell the Non-Drowsy Robitussin Products, Defendants researched the known and common side effects of DXM.  This is diligence that large companies like Defendants would do when selling a drug.  As a result, Defendants know that DXM causes drowsiness.  Furthermore, Defendants control their labeling, knowingly put on the "Non-Drowsy" representations, and know the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.

59.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy") and they overpaid for the products because they are sold at a price premium due to Defendants' misrepresentations.

60.     Plaintiff and the Subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y.Gen.Bus.Law § 349

(h).

### Count III: Violation of New York Gen. Bus. Law § 350
#### (on behalf of Plaintiff and the New York Subclass)

61.     Plaintiff incorporates by reference each and every factual allegation set forth

above.

62.     Plaintiff brings this cause of action individually and for the New York Subclass,

seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

63.     Plaintiff and the Subclass purchased Non-Drowsy Robitussin Products in New

York.

64.     Defendants' false and misleading "Non-Drowsy" claims impacted consumers at

large.  Defendants' misrepresentations have a broad impact on consumers at large, i.e., the

hundreds of thousands (or potentially millions) of New Yorkers that purchase Non-Drowsy

Robitussin Products.  These transactions recur every day.

65.     Defendants' "Non-Drowsy" claims were deceptive and misleading in a material

way.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to

consumers and affected their choice to purchase Non-Drowsy Robitussin Products.  And these

misrepresentations were likely to mislead reasonable consumers.

66.     Plaintiff and the Subclass saw and relied on Defendants' "Non-Drowsy"

misrepresentations.

67.     Defendants' misrepresentations were willful and knowing.  Because Defendants

make and sell the Non-Drowsy Robitussin Products, Defendants researched the known and

common side effects of DXM.  This is diligence that large companies like Defendants would do

when selling a drug.  As a result, Defendants knew that DXM causes drowsiness.  Furthermore,

Defendants control their labeling, knowingly put on the "Non-Drowsy" representations, and know

the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.

68.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy") and they overpaid for the products because the products are sold at a price premium due to Defendants' misrepresentations.

69.     Plaintiff and the Subclass seek statutory damages of $500, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y.Gen.Bus.Law § 350-e (3).

### Count IV: Breach of Express Warranty
### (on behalf of Plaintiff and a Nationwide Class)

70.     Plaintiff incorporates by reference each and every factual allegation set forth above.

71.     Plaintiff brings this count individually and for the Nationwide Class.

72.     Defendants, as the designers, manufacturers, marketers, distributors, suppliers, and/or seller of the Non-Drowsy Robitussin Products, issued material, written warranties by representing that the products were "Non-Drowsy."  This was an affirmation of fact about the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

73.     This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

74.     In fact, the Non-Drowsy Robitussin Products do not conform to the above-referenced representation because, as alleged in detail above, they cause drowsiness.  Thus, the warranty was breached.

75.     Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters, on February 9, 2022.

76.     Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to the warranty.

**Count V: Breach of the Magnuson-Moss Warranty Act**
**(on behalf of Plaintiff and the Nationwide Class)**

77.     Plaintiff incorporates by reference each and every factual allegation set forth above.

78.     Plaintiff brings this count individually and for the Nationwide Class.

79.     Defendants supplied Non-Drowsy Robitussin Products to consumers and Non-Drowsy Robitussin Products are consumer products.

80.     Defendants issued material, written warranties by representing that the products were "Non-Drowsy."  This was an affirmation of fact about the material in the products (i.e., a description of the effects of the ingredients) and a promise relating to the goods.

81.     Defendants represented that the material inside the Non-Drowsy Robitussin Products (the ingredients) would meet a specified level of performance over a specified period of time.  Defendants represented that, when taken at the recommended dosages, the products' ingredients would not cause drowsiness and drowsiness is not a side effect.

82.     This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

83.     In fact, the Non-Drowsy Robitussin Products do not conform to the above-

21

referenced representation because, as alleged in detail above, they cause drowsiness.  Thus, the warranty was breached.

84.     Plaintiff provided Defendants with notice of this breach of warranty, by mailing a notice letter to Defendants' headquarters, on February 9, 2022.

85.     Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to the warranty.

### Count VI: Intentional Misrepresentation
**(on behalf of Plaintiff and the Nationwide Class)**

86.     Plaintiff incorporates by reference each and every factual allegation set forth above.

87.     Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

88.     As alleged in detail above, Defendants' labeling represented to Plaintiff and Class members that the Products do not cause drowsiness and that drowsiness is not a side effect of these products.

89.     These representations were false and misleading.  As alleged above, the Products do cause drowsiness and drowsiness is a documented side effect.

90.     As alleged in detail above, when Defendants made these misrepresentations, they knew that they were false, were reckless to the truth, or were willfully blind.

91.     Defendants intended that Plaintiff and Class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

92.     Defendants' misrepresentations were a substantial factor and proximate cause in

causing damages and losses to Plaintiff and Class members.

93.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased the Products if they had known that the products cause drowsiness, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

## VI.   Jury Demand.

94.     Plaintiff demands a jury trial on all issues so triable.

## VII.   Prayer for Relief.

95.     Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages (including under N.Y.Gen.Bus.Law § 349 (h) and § 350-e (3)), treble damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

Date: February 16, 2022                    Respectfully submitted,

                                           By: */s/ Jonas B. Jacobson*

                                           Jonas B. Jacobson (Cal. Bar No. 269912)
                                           jonas@dovel.com

23

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069